## S07G1133. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY v. ATHENS NEWSPAPERS, LLC.

(663 SE2d 248)

CARLEY, Justice.

In 2005, Appellee Athens Newspapers, LLC submitted a request under the Open Records Act, OCGA § 50-18-70 et seq., to Appellant Unified Government of Athens-Clarke County, seeking police department records relating to the investigation of the 1992 rape and murder of Jennifer Stone. Despite extensive investigation, no one has yet been arrested or identified as a suspect, and investigators have not identified any new evidence for several years. However, the

---

police department has not closed the investigatory file, but has instead utilized certain procedures with the potential to provide new leads in the case, including the submission of a report to the FBI's Violent Criminal Apprehension Program and regular computerized checks of DNA profiles obtained from the crime scene against state and federal DNA databases.

Pursuant to the exemption from disclosure in OCGA § 50-18-72 (a) (4) for records in pending investigations and prosecutions, Appellant refused to produce any of the requested investigatory records other than the initial incident report. Thereafter, Appellee brought suit against Appellant, seeking an order for disclosure of the records. Appellee also alleged that the response to its request was untimely and that it was entitled to attorney's fees and litigation expenses. On cross motions for summary judgment, the trial court granted summary judgment in favor of Appellant, finding as a matter of law that the investigation into Ms. Stone's death is still pending and subject to exemption from disclosure under OCGA § 50-18-72 (a) (4), and that Appellant's response to Appellee's request was not untimely.

On appeal, the Court of Appeals reversed, narrowly construing that exemption, relying on *Parker v. Lee*, 259 Ga. 195 (378 SE2d 677) (1989), and holding that the investigation at issue is no longer pending. *Athens Newspapers v. Unified Govt. of Athens-Clarke County*, 284 Ga. App. 465, 466 (1) (643 SE2d 774) (2007). The Court of Appeals also construed OCGA § 50-18-70 (f) to mean that an agency must respond to an Open Records Act request within three business days after receipt of the request by the agency, rather than receipt by the employee in charge of the records. *Athens Newspapers v. Unified Govt. of Athens-Clarke County*, supra at 471 (3). Having granted certiorari to review these rulings, we affirm in part and reverse in part, holding that an investigation remains "pending" under OCGA § 50-18-72 (a) (4) until the file is closed, and that the three-day time period of OCGA § 50-18-70 (f) commences upon delivery of the request to the agency, rather than the particular employee in charge of the records.

1. The Open Records Act provides for the right of citizens to inspect public records, stating that,

except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, [they] shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen.

OCGA § 50-18-70 (b). Other than the specific statutory exemptions, this has been the law since 1959. Ga. L. 1959, p. 88, § 1. In 1976, this Court recognized the need for a strong "pending investigation" exemption:

> Statements, memoranda, narrative reports, etc. made and maintained in the course of a pending investigation should not in most instances, in the public interest, be available for inspection by the public. However, once an investigation is concluded and the file closed, either with or without prosecution by the state, such public records in most instances should be available for public inspection. . . . Generally, the public records that are prepared and maintained in a current and continuing investigation of possible criminal activity should not be open for public inspection. On the other hand, and again generally, public records prepared and maintained in a concluded investigation of alleged or actual criminal activity should be available for public inspection.

*Houston v. Rutledge*, 237 Ga. 764, 765-766 (229 SE2d 624) (1976). Thereafter, in *Napper v. Ga. Television Co.*, 257 Ga. 156 (356 SE2d 640) (1987), this Court articulated a "pending prosecution" exemption, adopting "the federal rule that a law-enforcement proceeding, to justify non-disclosure of a public record, must be an imminent adjudicatory proceeding of finite duration. [Cit.]" *Parker v. Lee*, supra at 197 (2).

In 1988, the legislature codified the exemptions for pending investigations and prosecutions in OCGA § 50-18-72 (a) (4). Ga. L. 1988, pp. 243, 247, § 3. That subsection provides that the following are exempt from public disclosure:

> Records of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity, other than initial police arrest reports and initial incident reports; provided, however, that an investigation or prosecution shall no longer be deemed to be pending when all direct litigation involving said investigation and prosecution has become final or otherwise terminated . . . .

OCGA § 50-18-72 (a) (4). This subsection was first construed in *Parker*, which "interpret[ed] the pending-prosecution exemption of OCGA § 50-18-72 (a) (4) to refer to imminent adjudicatory proceedings of finite duration." *Parker v. Lee*, supra at 198 (4). In making that interpretation, this Court first looked to the rule of construction

that "courts should construe statutes in connection and harmony with existing judicial decisions where possible. [Cit.]" *Parker v. Lee*, supra. Because *Parker* involved the "pending prosecution" exemption, the relevant prior case law consisted of *Napper*, and *Parker* did indeed "[c]onstru[e] § 50-18-72 (a) (4) consistently with *Napper* . . . ." *Parker v. Lee*, supra.

However, this case does not involve the "pending prosecution" exemption. Instead, its focus is on the "pending investigation" exemption. We cannot define the "pending investigation" exemption to the Open Records Act by simply adopting the judicial definition of the "pending prosecution" exemption in *Parker*. The prior case law which is relevant here is found in *Houston*. The portion of *Houston* quoted above was also quoted in *Napper*, supra at 162 (1) (a), and was the law at the time *Napper* was decided. Thus, *Napper* itself made a distinction between a pending investigation and a pending prosecution, and nowhere in *Parker* is that distinction questioned. It is clear, therefore, that, under *Houston* and *Napper*, an investigation is "pending" until it "is concluded and the file closed." Under *Parker*, the exemption in OCGA § 50-18-72 (a) (4), if possible, should be construed consistently with this definition.

Although exemptions from disclosure under the Open Records Act are narrowly construed, the Act obviously should not be construed "in derogation of its express terms . . . ." *The Corp. of Mercer Univ. v. Barrett & Farahany*, 271 Ga. App. 501, 503 (1) (a) (610 SE2d 138) (2005). OCGA § 50-18-72 (a) (4) provides an exemption for law enforcement records in "any pending investigation or prosecution of criminal or unlawful activity . . . ."

> The focus of subsection (a) (4) . . . is not upon the specific type of information contained in law enforcement and prosecution records. That subsection broadly exempts from disclosure the entirety of such records to the extent they are part of a "pending investigation or prosecution" and cannot otherwise be characterized as the initial arrest . . . or incident report.

*Atlanta Journal & Constitution v. City of Brunswick*, 265 Ga. 413, 414 (1) (457 SE2d 176) (1995). The plain and ordinary meaning of the adjective "pending" is "[r]emaining undecided; awaiting decision . . . ." *Black's Law Dictionary* 1154 (7th ed. 1999). " '[T]he term "pending" means nothing more than "remaining undecided." ' [Cit.]" *Fidelity Investment Co. v. Anderson*, 66 Ga. App. 57, 58 (17 SE2d 84) (1941).

This definition is consistent with both *Parker* and the final clause of OCGA § 50-18-72 (a) (4), which incorporated the holding of

*Napper*. Considered together, that clause and *Parker* stand for the proposition that a prosecution is pending until a conviction has been reviewed on direct appeal and no further direct litigation of an imminent nature and finite duration remains. After that time, a public proceeding has resulted in a decision which has reached a high degree of finality, and there is no basis for an exemption because the prosecution should not be considered to "remain undecided." Similarly, a seemingly inactive investigation which has not yet resulted in a prosecution logically "remains undecided," and is therefore "pending," until it "is concluded and the file closed." Only at that point has an investigation, in the absence of any prosecution, reached a decision with a high level of finality, even though it could possibly be reopened thereafter.

This analysis of the "pending investigation" exemption is not out of step with other jurisdictions, and is supported by the rationale underlying a strong exemption for investigations.

> What public records can be inspected is often vitally affected by provisions exempting certain police records from a general public disclosure requirement. Where courts have been faced with the need to explicitly construe such exemption provisions, they have reached varying conclusions as to their scope. In a number of these cases, the courts discussed the need for such an exemption to assure effective law enforcement, or in recognition of the right to privacy of an individual whose name may be in such police records. In several of these cases, the courts have gone on to construe provisions exempting investigative files from public disclosure to extend to all such files, whether of pending, contemplated, or concluded proceedings . . . .

Anno., 81 ALR3d 19, § 2 [a]. Some exemptions "apply even after an investigation has ended. [Cits.]" 76 CJS, Records § 126. See also *Williams v. Superior Court,* 852 P2d 377, 388 (II) (B) (Cal. 1993). Thus, the "pending investigation" exemption of OCGA § 50-18-72 (a) (4) is hardly an extreme exemption from public disclosure requirements.

Exempting each investigation which does not result in prosecution until it is concluded and the file is closed does not constitute an unreasonable public policy choice. As noted above, that policy protects the right to privacy of individuals named in investigative records and the integrity of investigations. It is a hard fact of law enforcement, of which the General Assembly was undoubtedly aware, that crimes sometimes remain unsolved for years until a break in the case, whether from a formerly reluctant witness or some

new connection of previously seized evidence to a particular suspect. See *Manley v. State*, 281 Ga. 466 (640 SE2d 9) (2007); *Denny v. State*, 281 Ga. 114 (636 SE2d 500) (2006); *Paschal v. State*, 280 Ga. 430 (628 SE2d 586) (2006); *Quedens v. State*, 280 Ga. 355 (629 SE2d 197) (2006). In the meantime, sensitive information, such as the details of a crime which are known only to the authorities and the perpetrator, should be kept confidential until the case is solved. Such information is present in virtually every case, including the rape and murder of Ms. Stone, as noted by the trial court in its order:

> The . . . files in question contain information known only to the murderer[ ] and a limited number of . . . investigative personnel. Police Department management has asserted a need to maintain the confidentiality of the investigative records on the ground that if access to materials is limited to police personnel, statements of witnesses and suspects and other evidence can be checked against information known only to investigators.

Contrary to the dissent, we do not "recognize[ ] that OCGA § 50-18-72 (a) (4) so greatly superseded the analysis in *Houston* that *Houston* no longer reflects valid Georgia law." (Dissent, pp. 202-203.) Rather, OCGA § 50-18-72 (a) altered the holding of that case in only one respect. In *Houston*, supra at 766, this Court required the trial court to examine the particular investigative files and "balanc[e] the public interest in favor of disclosure against the public interest in favor of non-disclosure . . . ." With the subsequent addition of OCGA § 50-18-72 (a) (4), however,

> [t]his approach cannot be followed . . . because the statute does not define or establish any guidelines to limit the scope of the exemption. The ongoing nature of the investigation naturally provides no basis to decide what is important. Requiring a law enforcement agency to segregate documents before a case is solved could result in the disclosure of sensitive information. The determination of sensitive or nonsensitive documents often cannot be made until the case has been solved. This exemption allows the law enforcement agency, not the courts, to determine what information, if any, is essential to solve a case. The language used in the statute protects law enforcement agencies from disclosure of the contents of their investigatory files.

*Newman v. King County*, 947 P2d 712, 716 (Wash. 1997) (En Banc). It is not for this Court to set arbitrary time limits on how long an

investigation can be kept open without tangible progress, when the legislature avoided any such time restrictions. Instead, the General Assembly made the legislative judgment that the only records in any pending investigations that must be disclosed in the public interest are "initial police arrest reports and initial incident reports . . . ." OCGA § 50-18-72 (a) (4).

> These provisions for [limited] mandatory disclosure from law enforcement investigatory files represent the Legislature's judgment . . . about what items of information should be disclosed and to whom. Unless that judgment runs afoul of the Constitution it is not our province to declare that the statutorily required disclosures are inadequate or that the statutory exemption from disclosure is too broad. . . . Requests for broader disclosure must be directed to the Legislature.

*Williams v. Superior Court,* supra at 393 (II) (B). Therefore, the Court of Appeals erred in requiring the disclosure of the relevant records.

2. OCGA §§ 50-18-70 (f) and 50-18-72 (h) " 'require an affirmative response to an open records request within three business days.' [Cit.]" *Benefit Support v. Hall County,* 281 Ga. App. 825, 833 (7) (637 SE2d 763) (2006). See also *Wallace v. Greene County,* 274 Ga. App. 776, 783 (2) (618 SE2d 642) (2005). The failure to make such a response within the statutory time period constitutes a violation of the Open Records Act and, if that violation is without substantial justification and there are not any special circumstances, a recovery of reasonable attorney's fees and costs is authorized pursuant to OCGA § 50-18-73 (b). *Benefit Support v. Hall County,* supra at 834 (7); *Wallace v. Greene County,* supra at 781, 784 (2).

The trial court here found as a matter of law that the starting time for compliance with the three-day requirement began when the employee in control of the requested police investigation records received Appellee's request. That employee responded within three business days. However, several days before that employee's receipt of the request, someone else at Appellant's offices had signed a certified mail receipt for the letter containing the request.

Although OCGA § 50-18-70 (f) refers to the "individual" in control of the public record, the restrictive signification "private or natural person" is not necessarily inherent in the word "individual." *Black's Law Dictionary,* p. 696 (5th ed. 1979). Furthermore, both OCGA § 50-18-70 (f) and OCGA § 50-18-72 (h) refer to action, within three business days, by "the public officer or agency" in control of the requested records. A review of these statutes and the Open

Records Act as a whole does not clearly indicate the legislative intent with respect to the starting point for the response time. Compare *Anderson v. Village of Jacksonville*, 103 SW3d 190, 194, 199 (Mo. App. 2003) (where a similar statute required a response by "the end of the third business day following the date the request is received by the custodian of records of a public governmental body"). However, "[t]he very purpose of the Open Records Act 'is to encourage public access to government information and to foster confidence in government through openness to the public.' [Cit.]" *Howard v. Sumter Free Press*, 272 Ga. 521, 522 (1) (531 SE2d 698) (2000). Appellee persuasively argued in the Court of Appeals that, if the response time begins only when the specific employee in charge of the records receives the request, "the agency would be able to extend the response time indefinitely, or even avoid sending the required response, by failing to forward the request to the appropriate employee in a timely manner after it has received the request." *Athens Newspapers v. Unified Govt. of Athens-Clarke County*, supra at 471 (3). We approve the Court of Appeals' holding

> that agencies should not be allowed to circumvent the statute's time restrictions through inaction or malfeasance. We find that construing OCGA § 50-18-70 (f) to mean that the agency must respond to an Open Records Act request within three business days after the agency receives the request is necessary to prevent governmental abuse and to uphold the purposes of the Act. Accordingly, because the undisputed evidence showed that [Appellant] failed to respond to [Appellee's] Open Records Act request within three business days of receiving the request, the trial court erred in finding as a matter of law that [Appellant] did not violate OCGA § 50-18-70 (f).

*Athens Newspapers v. Unified Govt. of Athens-Clarke County*, supra at 472 (3). Appellant's policy arguments, including that the three-day limit provides an unreasonably short time for large public agencies to process requests, are properly addressed to the Legislature.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Thompson, J., who concur in part and dissent in part.*

HUNSTEIN, Presiding Justice, concurring in part and dissenting in part.

This Court has repeatedly stressed that "[t]he very purpose of the Open Records Act 'is to encourage public access to government

information and to foster confidence in government through openness to the public.' [Cit.]" *Howard v. Sumter Free Press*, 272 Ga. 521, 522 (1) (531 SE2d 698) (2000). See also *McFrugal Rental of Riverdale v. Garr*, 262 Ga. 369 (418 SE2d 60) (1992); *Athens Observer v. Anderson*, 245 Ga. 63 (2) (263 SE2d 128) (1980). Hence, we have recognized that "[b]ecause public policy strongly favors open government, 'any purported statutory exemption from disclosure under the Open Records Act must be narrowly construed.' " (Footnote and emphasis omitted.) *City of Atlanta v. Corey Entertainment*, 278 Ga. 474, 476 (1) (604 SE2d 140) (2004). At issue in this case is the construction to be given the exemption for pending investigations or prosecutions in subsection (a) (4) of OCGA § 50-18-72 of the Open Records Act. Consistent with the legislative purpose of the Act and the narrow construction given the "pending" exemption in *Parker v. Lee*, 259 Ga. 195, 198 (4) (378 SE2d 677) (1989), which interpretation has become "an integral part of the statutory exemption" so that "any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute," *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (1) (637 SE2d 14) (2006), I would construe OCGA § 50-18-72 (a) (4) as applying only to those investigations and prosecutions being actively, definitely and imminently pursued. Thus, I would recognize that the criminal investigation by Athens-Clarke County Police Department (ACCPD) into the 1992 murder of Jennifer Stone is no longer pending and that appellee Athens Newspapers, LLC is entitled under the Open Records Act to access and copy ACCPD's files. Accordingly, I must respectfully dissent to the majority's holding in Division 1. Because the majority's holding in Division 2 is wholly consistent with the purpose of the Open Records Act, I concur fully in that division.

In *Parker v. Lee*, supra, 259 Ga. at 195, this Court expressly declined to apply a limited construction to OCGA § 50-18-72 (a) (4). The Open Records Act request in *Parker v. Lee* arose out of habeas corpus proceedings in which Parker, who had been convicted of murder and rape and sentenced to death, sought the criminal investigatory file on the rape charge. Although in an earlier appeal this Court had upheld Parker's murder conviction and death sentence, *Parker v. State*, 256 Ga. 543 (350 SE2d 570) (1986), we had reversed the rape conviction in a manner that left the State free to retry Parker on that charge.[1] Id. at 196. Parker's request for the rape investigatory file was denied on the basis that "Parker's indictment for rape [was] outstanding," id., and thus came within the "pending

---

[1] See *Parker v. State*, 255 Ga. 167 (5) (336 SE2d 242) (1985) (evidence sufficient to uphold Parker's rape verdict).

investigation or prosecution" exemption in OCGA § 50-18-72 (a) (4). On appeal, this Court thoroughly discussed the legislative history of subsection (a) (4) and the existing case law. Striving to "give effect to the purpose and intent of the legislature [cit.]" and to "construe that portion of the act in view of the legislative intent found in the act as a whole [cit.]," *Parker v. Lee*, supra at 198 (4), we interpreted "the pending-prosecution exemption of [subsection] (a) (4) to refer to imminent adjudicatory proceedings of finite duration." Id. at 198 (4). This Court then explicitly held that the final phrase in subsection (a) (4)[2] is not the exclusive means of proving when an investigation or prosecution has ceased to "pend" for purposes of the exception, when we stated, "[m]oreover, we construe the last phrase of that exemption as but one example of when a prosecution should not be considered 'pending' for purposes of the exception." Id. Applying that construction, we rejected the interpretation the trial court gave to the word "pending," id. at 197 (3), and held that because the Sheriff and District Attorney had "evidenced no intent to retry Parker" on the rape charge, id. at 198 (5), and had "made no showing that Parker would be prosecuted in the near future," id. at 199, the mere *possibility* that Parker could be retried on the rape charge "does not warrant non-disclosure of the investigatory files." Id. at 196. We thus concluded that the trial court "erred in concluding that the pending rape charge was a valid reason to prevent access to the files." Id. at 199 (5).

The factual circumstances reflecting a "pending" matter were far stronger in *Parker v. Lee*, supra, than in the instant case, given that an accused had been identified, an indictment had been obtained and evidence sufficient to support a conviction had been compiled. Had this Court construed OCGA § 50-18-72 (a) (4) using the strict dictionary definition the majority applies in this case, there is no question that the rape prosecution in *Parker v. Lee* should have been deemed "pending."

The majority's holding is wholly inconsistent with *Parker v. Lee* and its interpretation of "pending," but the majority does not overrule this controlling precedent. It cannot do so because of the well-established rule that

[o]nce the court interprets the statute, the interpretation has become an integral part of the statute. This having been done, (over a long period of history) any subsequent "rein-

---

[2] That final phrase states that an investigation or prosecution "shall no longer be deemed to be pending when all direct litigation involving said investigation and prosecution has become final or otherwise terminated." OCGA § 50-18-72 (a) (4).

terpretation" would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute. The principle is particularly applicable where an amendment is presented to the legislature and the statute is amended in other particulars.

(Citations and punctuation omitted.) *Tiismann v. Linda Martin Homes Corp.*, supra, 281 Ga. at 139 (1). The Legislature has taken no action to amend the language in OCGA § 50-18-72 (a) (4) or otherwise alter any aspect of the interpretation given that language 19 years ago in *Parker v. Lee*, even though in 16 of those 19 years it has revisited that statute to add or amend other provisions.

Instead, the majority "distinguishes" *Parker v. Lee* on the basis that it deals with prosecutions, not investigations. That distinction is not supported by the plain language in OCGA § 50-18-72 (a) (4). Subsection (a) (4) exempts "[r]ecords of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity." The Legislature did not create one exemption for pending prosecutions and a separate one for pending investigations with this language. "Pending" is the crucial word in the exemption because whether or not a matter is "pending" determines when the exemption applies, not whether the pending matter is an investigation or a prosecution. The majority's holding creates the anomalous result that the same word in the same statute is given two diametrically opposite meanings. "Pending" requires proof of definite and imminent action when it comes to prosecutions but no amount of proof of inactivity can ever suffice when it comes to investigations: only official closure of the file by the government authority in charge of the investigation can authorize access of the investigation information to the public.

Because nothing in the plain language of OCGA § 50-18-72 (a) (4) supports the majority's creation of two separate exemptions, it turns to *Houston v. Rutledge*, 237 Ga. 764 (229 SE2d 624) (1976) and asserts that the exemption must be construed "in connection and harmony with" this decision. Maj. Op., p. 195. I agree with the majority that this Court in *Houston* "recognized the need for a strong 'pending investigation' exemption." Id. at p. 194. However, the legislative history of OCGA § 50-18-72 (a) (4) clearly shows that the General Assembly did not agree with this Court, given that the exemption was not added to the Open Records Act until 12 years after *Houston* was rendered. Rather than construing subsection (a) (4) in light of *Houston*, I would recognize that the Legislature by enacting that exemption expressly rejected *Houston* and the balancing test it proposed. Indeed, the majority itself recognizes that OCGA § 50-18-72 (a) (4) so greatly superseded the analysis in *Houston* that

*Houston* no longer reflects valid Georgia law. Maj. Op., p. 197.

The majority holds that a criminal investigation is no longer deemed to be pending only when the investigative file is closed. Maj. Op., p. 196. Nothing in OCGA § 50-18-72 (a) (4) supports the majority's holding that closing of the file is the *exclusive* means of proving that an investigation has ceased to be "pending" for purposes of the exemption. When this Court in *Parker v. Lee* explicitly construed the last phrase of subsection (a) (4) as "but one example" of when a prosecution is no longer included within the exemption, we recognized that each case must be assessed in light of its unique facts in order to determine whether the exemption applies. There may be instances in which the closing of the file is indeed the point at which the investigation ceases to be pending. But the majority's "bright line rule" allows for no exceptions, even in cases such as this one. It is not setting an "arbitrary time limit" to recognize under the particular facts established by the record in this specific case that the ACCPD's investigation into Jennifer Stone's murder is no longer "pending." It is uncontroverted ACCPD has made no arrests and, indeed, has never identified anyone as a suspect. No litigation or prosecution has been undertaken in the 16 years since the crimes were committed. In addition to this undisputed lack of progress on the case, the record reflects that there has been no active investigation into the Stone case in years.[3] The reality is that ACCPD has ceased all meaningful efforts to solve the Stone case. Thus, I cannot agree with the majority that the mere fact ACCPD has not "officially closed" the file into the 1992 murder of Stone is alone sufficient to exempt the file from public scrutiny by Athens Newspapers.[4]

The majority's bright line rule broadly construes an exemption this Court is obligated to construe narrowly. *City of Atlanta v. Corey Entertainment*, supra, 278 Ga. at 476 (1). It is contrary to both the purpose and the spirit of the Open Records Act by limiting rather than promoting freedom of information. I would recognize that OCGA § 50-18-72 (a) (4), like its Federal counterpart,

> is particularly important, both because of the potency of the police power and because police abuse is the type of govern-

---

[3] I agree with the Court of Appeals that neither the "availability" of crime analysts to assist in investigating a case in which no work is being done nor an "extensive review" of a police file establishes that an investigation remains pending.

[4] Even should a DNA profile match be made, there is no evidence that disclosure of the investigative file will hinder any subsequent prosecution. See, e.g., *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007) (CODIS match enabled Fulton County "cold case" squad to identify suspect in 12-year-old rape).

ment corruption that the FOIA [and OCGA § 50-18-72 (a) (4)] ha[ve] been successful in allowing the public to see. . . . Law enforcement records require a heightened level of openness given the expansive nature of the police power and the primary motivation of open records laws. They enable the public to serve the "watchdog" function of making sure their law enforcement officials are serving the public interest. The Rodney King beating, . . . the shootings at Ruby Ridge, and the FBI's actions at Waco all underscore this need.

Jamison S. Prime, A Double-Barrelled Assault: How Technology and Judicial Interpretations Threaten Public Access to Law Enforcement Records, 48 Fed. Comm. L.J. 341, 345, 368 (1996). Because I would interpret the pending investigation exemption in the Open Records Act in a manner that encourages governmental officials and agencies to remain accountable to the people of Georgia, I respectfully dissent to Division 1 of the majority's opinion.

I am authorized to state that Chief Justice Sears and Justice Thompson join this dissent.

DECIDED JUNE 30, 2008 —
RECONSIDERATION DENIED JULY 25, 2008.

*William C. Berryman, Jr.*, for appellant.
*Hull, Towill, Norman, Barrett & Salley, David E. Hudson, Davis A. Dunaway*, for appellee.
*Susan J. Moore, Delong, Caldwell & Bridgers, Michael A. Caldwell, Charles C. Olson, James F. Grubiak, Kemuel A. Kimbrough, Ted C. Baggett, Arnall, Golden & Gregory, Robert L. Rothman, Christopher K. Withers*, amici curiae.